UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Anna Marquez, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>Sazerac Company, Inc.,<br><br>Defendant | 1:23-cv-00097<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Sazerac Company, Inc. ("Defendant") manufactures, markets, and sells cinnamon whisky under the Fireball brand.

 

2. Within the past few years, purchasers noticed what appeared to be its availability "in supermarkets [and convenience stores] in small bottles for 99 cents."




3. One writer who saw a "huge Fireball display in front of the cash register [] at a gas station" wondered if "th[at] specific store [was] doing something they're not supposed to be doing[?]" by selling "cinnamon flavored whiskey!!"[1]

4. Liquor stores reported a decline in sales of Fireball cinnamon whisky, confirmed by their customers who told them they preferred to purchase it for lower prices elsewhere.[2]

5. Expecting those small bottles labeled "Fireball Cinnamon" to contain whiskey "[was] an easy mistake to make, and one intended by the manufacturer."

6. In fact, what consumers were purchasing at non-liquor stores "[was] not whisky at all" even though "the[ir] labels are almost identical."

7. When consumers "look closer [they] will see that it is actually called simply"

---

[1] CJ McIntyre, Since When Can You Buy Fireball at Gas Stations in the Hudson Valley?, Hudson Valley Country, May 14, 2021.
[2] Steve Barnes, Fireball whisky minis in a supermarket? Actually, no, Table Hopping Blog, Albany Times Union, Apr. 8, 2021.

2

"'Fireball Cinnamon (notice there's no Whisky after the word Cinnamon) [which] is actually a malt beverage" flavored to taste like its cinnamon whisky (the "Product").



8. Unlike whisky which is a distilled spirit, a malt beverage is based on fermentation to create a neutral base to which flavors and colors may be added ("Flavored Malt Beverage" or "FMB").

9. While federal and identical state regulations allow the Product's use of the distilled spirit brand name of Fireball, they prohibit the overall misleading impression created as to "Fireball Cinnamon" version.

10. The bottles appear identical but for the word "Whisky" on the front label, which most purchasers seeking alcohol will not even detect.

11. "Fireball" is not qualified with the word "brand," which could alert purchasers what they are buying has little connection to cinnamon whisky.

12. Even the Fireball Cinnamon's statement of composition, in the smallest allowed size,

3

draws particular attention to the apparent use of the distilled spirit of whisky, stating "Malt Beverage With Natural Whisky & Other Flavors and Carmel Color."



13. Using the words "With Natural Whisky & Other Flavors" is a clever turn of phrase because consumers who strain to read this will see how it "Natural Whisky" is distinct from "Other Flavors."

14. They will think the Product is a malt beverage with added (1) natural whisky and (2) other flavors.

15. What the label means to say is that the Product contains "Natural Whisky Flavors & Other Flavors," but by not including the word "Flavors" after "Natural Whisky," purchasers who look closely will expect the distilled spirit of whisky was added as a separate ingredient.

16. However, even where a distilled spirit is used to manufacture flavors, it loses its class and type when blended with other ingredients.

17. When viewed together with the Fireball distilled spirit brand name, the label misleads consumers into believing it is or contains distilled spirits.

18. As a result of the false and misleading representations, the Product is sold at a

premium price, $0.99 for 50 mL.

## Jurisdiction and Venue

19. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

20. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

21. Plaintiff is a citizen of Illinois.

22. Defendant is a citizen of New Orleans and Kentucky.

23. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

24. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here from thousands of stores including grocery stores, big box stores, gas stations and convenience stores, in the States Plaintiff seeks to represent.

25. Venue is in this District with assignment to the Eastern Division because a substantial part of the events or omissions giving rise to these claims occurred in Cook County, including Plaintiff's purchase, reliance on the identified statements, and subsequent awareness they were false and misleading.

## Parties

26. Plaintiff Anna Marquez is a citizen of Chicago, Cook County, Illinois.

27. Defendant Sazerac Company, Inc. is a New Orleans corporation with a principal place of business in Kentucky.

28. Defendant manufactures and markets Fireball Cinnamon Whisky and Fireball

Cinnamon.

29. Plaintiff purchased the Product at stores including but not necessarily limited to Jewel-Osco, 8730 W Dempster St, Niles, Illinois 60714 in 2021 and/or 2022, and/or among other times, at or around the above-referenced price.

30. Plaintiff is like many consumers of alcoholic beverages who prefers distilled spirits or products containing distilled spirits to malt-based beverages.

31. Plaintiff saw the labeling elements of the Fireball Cinnamon and did not immediately notice the differences from the Fireball Cinnamon Whisky.

32. Plaintiff expected the Fireball Cinnamon was whisky and/or contained whisky in a non-de minimis amount.

33. Plaintiff paid more for the Product than she would have had she known the representations and omissions were false and misleading, or would not have purchased it.

34. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

35. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its attributes and/or composition.

36. Plaintiff is unable to rely on the labeling of not only this Product, but other flavored malt beverages which use the names of distilled spirits, because she is unsure of whether their representations are truthful.

37. If Defendant's labeling was truthful, she would have more confidence in the labeling of other flavored malt beverages.

<u>Class Allegations</u>

38. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of North Dakota, Wyoming, Idaho, Alaska, Iowa, Mississippi, Arkansas, Kansas, Arizona, South Carolina and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

39. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

40. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

41. Plaintiff is an adequate representative because her interests do not conflict with other members.

42. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

43. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

44. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

45. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act<br>
("ICFA"), 815 ILCS 505/1, *et seq.*</u>

46. Plaintiff incorporates by reference all preceding paragraphs.

47. Plaintiff expected the Product would contain distilled spirits in a non-de minimis or non-negligible amount.

48. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts<br>
(Consumer Fraud Multi-State Class)</u>

49. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

50. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

51. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

<u>Breaches of Express Warranty,<br>
Implied Warranty of Merchantability/Fitness for a Particular Purpose<br>
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

52. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it would contain distilled spirits in a non-de minimis or non-negligible amount.

53. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail,

product descriptions, and targeted digital advertising.

54. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires, which was the consumption of distilled spirits instead of a malt beverage.

55. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it would contain distilled spirits in a non-de minimis or non-negligible amount.

56. Defendant's representations affirmed and promised that the Product would contain distilled spirits in a non-de minimis or non-negligible amount.

57. Defendant described the Product so Plaintiff believed it would contain distilled spirits in a non-de minimis or non-negligible amount, which became part of the basis of the bargain that it would conform to its affirmations and promises.

58. Defendant had a duty to disclose and/or provide non-deceptive promises, descriptions and marketing of the Product.

59. This duty is based on Defendant's outsized role in the market for cinnamon whisky as the seller of Fireball Cinnamon Whisky.

60. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

61. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

62. Defendant received notice and should have been aware of these issues due to complaints by consumers and third-parties, including regulators and competitors, to its main offices and through online forums.

63. The Product did not conform to its affirmations of fact and promises due to

Defendant's actions.

64. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it would contain distilled spirits in a non-de minimis or non-negligible amount.

65. The Product was not merchantable because Defendant had reason to know the particular purpose for which they were bought by Plaintiff, because she expected that it would contain distilled spirits in a non-de minimis or non-negligible amount, and she relied on its skill and judgment to select or furnish such a suitable product.

### Negligent Misrepresentation

66. Defendant had a duty to truthfully represent the Product, which it breached.

67. This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, the custodian of the Fireball brand of cinnamon whisky.

68. The representations and omissions went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first Fireball has been known for.

69. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

70. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

71. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

<u>Fraud</u>

72. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it would contain distilled spirits in a non-de minimis or non-negligible amount.

<u>Unjust Enrichment</u>

73. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Certifying Plaintiff as representative and the undersigned as counsel for the classes;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Awarding monetary, statutory and/or punitive damages and interest;

4. Awarding costs and expenses, including reasonable attorney and expert fees; and

5. Other and further relief as the Court deems just and proper.

Dated: January 7, 2023

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com