UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Mike Ortiz and Shelly Carnes, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>- against -<br><br>Sazerac Company, Inc.,<br><br>      Defendant | 1:23-cv-00097<br><br>Hon. Mary M. Rowland<br><br>First Amended<br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiffs alleges upon information and belief, except for allegations about Plaintiffs, which are based on personal knowledge:

1. Sazerac Company, Inc. ("Defendant") manufactures, markets, and sells cinnamon whisky and cinnamon versions of its popular Fireball product.

 

2. Until a few years ago, consumers could only able to buy the cinnamon whisky version at liquor stores, shown on the left, at roughly $1.19, when conspicuously similar Fireball products began appearing at gas stations and convenience stores, shown on the right, for $0.99.





3. In the last few years, "[Americans] [] have seen some new bottles of alcohol on the shelves of their favorite gas station [and convenience stores] [which] look exactly like hard liquor."

4. Even journalists and media members were fooled seeing various brands of hard liquor "sold everywhere," such as gas stations, drug stores and elsewhere, wondering "what did they do to be able to skirt the law?"

5. One television station in Virginia pointed out the trend of "Fake Booze [as]

[C]onvenience stores start stocking shelves with faux liquor."

6. The roll out of Fireball Cinnamon was carefully planned and executed by Defendant, which sought to capitalize on its valued Fireball brand and changing liquor laws across the nation that allowed flavored malt beverages to be sold in an increasing number of non-liquor stores.

7. A writer who saw a "huge Fireball display in front of the cash register [] at a gas station" wondered if "th[at] specific store [was] doing something they're not supposed to be doing[?]" by selling "cinnamon flavored whiskey!!"[1]

8. Liquor stores reported a decline in sales of Fireball cinnamon whisky, confirmed by their customers who told them they preferred to purchase it for lower prices elsewhere.[2]

9. Regular consumers, less inclined than investigative journalists to get to the bottom of this, embraced the availability of their favorite distilled spirits, sharing their since experiences on social media praising the authenticity of the Product.

10. Expecting those small bottles labeled "Fireball Cinnamon" to contain whiskey "[was] an easy mistake to make, and one intended by the manufacturer."

11. In fact, what consumers were purchasing at these gas stations and convenience stores "[was] not whisky at all" even though "the[ir] labels are almost identical."

12. When consumers "look closer [they] will see that it is actually called simply" "'Fireball Cinnamon (notice there's no Whisky after the word Cinnamon) [which] is actually a malt beverage" flavored to taste like its cinnamon whisky (the "Product").

---

[1] CJ McIntyre, Since When Can You Buy Fireball at Gas Stations in the Hudson Valley?, Hudson Valley Country, May 14, 2021.
[2] Steve Barnes, Fireball whisky minis in a supermarket? Actually, no, Table Hopping Blog, Albany Times Union, Apr. 8, 2021.



13. Unlike whisky which is a distilled spirit, a malt beverage is based on fermentation to create a neutral base to which flavors and colors are added ("Flavored Malt Beverage" or "FMB").

14. According to a professor of economics, "[D]esigning products to match industry regulations is hardly new," noting "how auto-manufacturers have responded to new fuel-efficiency requirements by designing a car's weight to be just within a less stringent standard."

15. In the present instance, the mini bottles of Fireball "circumvent regulations" which prevent distilled spirits from being sold outside of liquor stores in many states.

16. While federal and identical state regulations allow the cinnamon version to use the distilled spirit brand name of Fireball, they prohibit the overall misleading impression that it is identical to the whisky version.

17. The bottles appear identical but for the word "Whisky" on the front label, which most purchasers, accustomed to buying Fireball Whiskey in liquor stores, do not even notice.

18. According to information disclosed before the Trademark Trials and Appeals Board ("TTAB"), "fireball" is the name, or part of the name, of a number of cocktails, shots and shooters, most of which include whisky or liqueur(s) as ingredients.

19. The name has become part of the lexicon of alcoholic beverages in the same way

4

martinis and margaritas indicate the presence of gin and tequila.

20. The sale of distilled spirits in small bottles, referred to as "minis" or "nips," is common and known to most Americans due to their unfortunate abundance on the side of most roads.

21. Until a few years ago, no consumers would have seen non-distilled spirits sold in mini bottles.

22. The concept of bottling non-distilled spirits in a mini bottle is deceptive, because purchasers of small bottles of alcohol expect what they are buying is potent and high in proof, like the Fireball Whisky, bottled at 33% alcohol by volume ("ABV") or 66 proof.

23. Purchasers of mini bottles of alcohol are not expecting that what they are buying will be half as strong, as the Fireball Cinnamon is 16.5% ABV and 33 proof.

24. "Fireball" is not qualified with the word "brand," which could alert purchasers what they are buying has little connection to cinnamon whisky.

25. Even the Fireball Cinnamon's statement of composition, in the smallest allowed size, draws particular attention to the apparent use of the distilled spirit of whisky, stating "Malt Beverage With Natural Whisky & Other Flavors and Carmel Color."



26. Using the words "With Natural Whisky & Other Flavors" is a clever turn of phrase because consumers who strain to read this will see how "Natural Whisky" is on a separate line and apparently unconnected to the "Other Flavors."

27. They will think the Product is a malt beverage with added (1) natural whisky and (2) other flavors.

28. What the label means to say is that the Product contains "Natural Whisky Flavors & Other Flavors," but by not including the word "Flavors" after "Natural Whisky," purchasers who look closely will expect the distilled spirit of whisky was added as a separate ingredient.

29. However, even where a distilled spirit is used to manufacture flavors, it loses its class and type when blended with other ingredients.

30. Sources have confirmed that the amount of real whiskey in the Product is the equivalent of a thimble full per 2,500 gallons, less than a "drop in a bucket" in the malt beverage base.

31. When viewed together with the Fireball distilled spirit brand name, the label misleads consumers into believing it is or contains distilled spirits.

32. As a result of the false and misleading representations, the Product is sold at a premium price, $0.99 for 50 mL.

Jurisdiction and Venue

33. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

34. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

35. Plaintiff Mike Ortiz is a citizen of Indiana.

36. Plaintiff Shelly Carnes is a citizen of South Carolina.

37. Defendant is a citizen of New Orleans and Kentucky.

38. The class of persons Plaintiffs seek to represent includes persons who are citizens of different states from which Defendant is a citizen.

39. The members of the class Plaintiffs seek to represent are more than 100, because the Product has been sold with the representations described here from thousands of stores including grocery stores, big box stores, gas stations and convenience stores, in the States Plaintiffs seek to represent.

40. Venue is in this District with assignment to the Eastern Division because a substantial part of the events or omissions giving rise to these claims occurred in Cook County, including Plaintiff Ortiz' purchase in Calumet City, reliance on the identified statements, and subsequent awareness they were false and misleading.

## Parties

41. Plaintiff Mike Ortiz is a citizen of East Chicago, Lake County, Indiana.

42. Plaintiff Shelly Carnes is a citizen of Rock Hill, York County, South Carolina.

43. Defendant Sazerac Company, Inc. is a New Orleans corporation with a principal place of business in Kentucky.

44. Defendant manufactures and markets Fireball Cinnamon Whisky and Fireball Cinnamon.

45. Plaintiff Ortiz purchased the Fireball Cinnamon at the Quick Stop Go-Lo gas station at 264 Torrence Avenue, Calumet City, Illinois, approximately three miles from the Illinois-Indiana border, in the fall of 2022.

46. After the fall of 2022, Plaintiff Ortiz did not observe the Product being sold at that

Go-Lo gas station anymore.

47. Plaintiff Ortiz purchased the Fireball Cinnamon at the Citgo gas station 1312 West Chicago Avenue, East Chicago, Indiana, between 2021 and 2022, among other times.

48. Plaintiff Carnes purchased the Fireball Cinnamon at the River Stop Food Mart, 3900 Mount Gallant Road, Rock Hill, South Carolina between 2021 and 2023, among other times.

49. Before buying the Fireball Cinnamon, Plaintiffs had purchased the Fireball Whisky at liquor stores near where they live.

50. When they saw the Fireball Cinnamon available, they did not think twice to buy it, thinking it was the same Fireball they had previously purchased.

51. Plaintiffs are like many consumers of alcoholic beverages who prefer distilled spirits or products containing distilled spirits to malt-based beverages.

52. Plaintiffs saw the labeling elements of the Fireball Cinnamon and did not immediately notice the differences from the Fireball Whisky.

53. Plaintiffs expected the Fireball Cinnamon was whisky and/or contained whisky in a non-de minimis amount.

54. Plaintiffs paid more for the Product than they would have had they known the representations and omissions were false and misleading, or would not have purchased it.

55. The value of the Product that Plaintiffs purchased was materially less than its value as represented by Defendant.

56. Plaintiffs intend to, seek to, and will purchase mini alcoholic beverages again when they can do so with the assurance their representations are consistent with their attributes and/or composition.

57. Plaintiffs are unable to rely on the labeling of not only this Product, but other flavored

8

malt beverages which use the names of distilled spirits, because they are unsure of whether their representations are truthful.

58. If Defendant's labeling was truthful, they would have more confidence in the labeling of other flavored malt beverages.

## Class Allegations

59. Plaintiffs seek certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged;
>
> **Indiana Class:** All persons in the State of Indiana who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **South Carolina Class:** All persons in the State of South Carolina who purchased the Product during the statutes of limitations for each cause of action alleged.

60. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiffs and class members are entitled to damages.

61. Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

62. Plaintiffs are adequate representatives because their interests do not conflict with other members.

63. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

64. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

65. Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

66. Plaintiffs seek class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act<br>
("ICFA"), 815 ILCS 505/1, et seq., Indiana Deceptive<br>
Consumer Sales Act ("DCSA"), Ind. Code. § 24-5-0.5, et seq.,<br>
South Carolina. Consumer Protection Code, S.C. Code Ann. §<br>
37-1-101 et seq.</u>

67. Plaintiffs incorporates by reference all preceding paragraphs.

68. Plaintiffs expected the Product would contain distilled spirits in a non-de minimis or non-negligible amount.

69. Plaintiffs would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty,<br>
Implied Warranty of Merchantability/Fitness for a Particular Purpose<br>
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.</u>

70. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiffs that it would contain distilled spirits in a non-de minimis or non-negligible amount.

71. Defendant directly marketed the Product to Plaintiffs through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

72. Defendant knew the product attributes that potential customers like Plaintiffs were seeking and developed its marketing and labeling to directly meet their needs and desires, which was the consumption of distilled spirits instead of a malt beverage.

73. The representations about the Product were conveyed in writing and promised it

10

would be defect-free, and Plaintiffs understood this meant it would contain distilled spirits in a non-de minimis or non-negligible amount.

74. Defendant's representations affirmed and promised that the Product would contain distilled spirits in a non-de minimis or non-negligible amount.

75. Defendant described the Product so Plaintiffs believed it would contain distilled spirits in a non-de minimis or non-negligible amount, which became part of the basis of the bargain that it would conform to its affirmations and promises.

76. Defendant had a duty to disclose and/or provide non-deceptive promises, descriptions and marketing of the Product.

77. This duty is based on Defendant's outsized role in the market for cinnamon whisky as the seller of Fireball Whisky.

78. Plaintiffs recently became aware of Defendant's breach of the Product's warranties.

79. Plaintiffs provided or provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

80. Defendant received notice and should have been aware of these issues due to complaints by consumers and third-parties, including regulators and competitors, to its main offices and through online forums.

81. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

82. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it would contain distilled spirits in a non-de minimis or non-negligible amount.

83. The Product was not merchantable because Defendant had reason to know the particular purpose for which they were bought by Plaintiffs, because they expected that it would contain distilled spirits in a non-de minimis or non-negligible amount, and they relied on its skill and judgment to select or furnish such a suitable product.

### Negligent Misrepresentation

84. Defendant had a duty to truthfully represent the Product, which it breached.

85. This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, the custodian of the Fireball brand of cinnamon whisky.

86. The representations and omissions went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first Fireball has been known for.

87. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

88. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

89. Plaintiffs reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

### Fraud

90. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it would contain distilled spirits in a non-de minimis or non-negligible amount.

### Unjust Enrichment

91. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiffs and class members, who seek

restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiffs demand a jury trial on all issues.

**WHEREFORE**, Plaintiffs pray for judgment:

1. Certifying Plaintiffs as representatives and the undersigned as counsel for the classes;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Awarding monetary, statutory and/or punitive damages and interest;

4. Awarding costs and expenses, including reasonable attorney and expert fees; and

5. Other and further relief as the Court deems just and proper.

Dated: April 4, 2023

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com